UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WHITE HAWTHORNE, LLC and WHITE
HAWTHORNE II, LLC

               Plaintiffs,

            v.

THE REPUBLIC OF ARGENTINA,

               Defendant.

              CIVIL INDEX NO.  16-1042

---

## AMENDED COMPLAINT

Plaintiffs White Hawthorne, LLC ("White Hawthorne") and White Hawthorne II, LLC ("White Hawthorne II") (collectively, "Plaintiffs"), by their undersigned counsel, as and for its Amended Complaint against Defendant Republic of Argentina (the "Republic"), allege as follows:

## NATURE OF THE ACTION

1.      In part, this is a breach of contract action arising from the Republic's failure to make contractually-mandated principal and interest payments on certain bonds held by White Hawthorne II and issued by the Republic pursuant to a Fiscal Agency Agreement, dated October 19, 1994 (the "1994 FAA") between the Republic and Bankers Trust Company, as Fiscal Agent.  For its relief, White Hawthorne II seeks payment of the principal amount of the bonds together with any accrued and unpaid interest, as provided for in the 1994 FAA.  A true and accurate copy of the 1994 FAA is attached as **Exhibit A**.

2.      This is also a breach of contract action arising from the Republic's failure to make contractually-mandated principal and interest payments on certain bonds held by White

Hawthorne and issued by the Republic pursuant to the USD Discount Bond and Par Bond Fiscal Agency Agreement, dated April 7, 1993 (the "USD FAA"). For its relief, White Hawthorne seeks payment of the principal amount of the bonds together with any accrued and unpaid interest.

3.    This action also seeks damages for the Republic's violations of the Equal Treatment Provision of the 1994 FAA, paragraph 1(c) of the FAA (the "1994 FAA Equal Treatment Provision"), which provides for equal treatment in terms of rank and priority of payment for holders of bonds issued under the 1994 FAA with respect to any unsecured and unsubordinated External Indebtedness as defined in the 1994 FAA.

4.    Similarly, this action further seeks damages for the Republic's violations of its payment obligations pursuant to Section 4.01(f) of the Collateralized Discount Bond and Par Bond Exchange Agreement, dated December 6, 1992 (the "DPB EA") and Section 9(a)(ii) of the Terms and Conditions of Bonds, attached as Exhibit 1 to the DPB EA (together, "USD Equal Treatment Provisions"), which provide for equal treatment in terms of rank and priority of payment for holders of bonds issued under the USD FAA with respect to any Indebtedness as defined in the DPB EA. A true and accurate copy of the DPB EA is attached as **Exhibit B.**

5.    This action also seeks specific performance of the Republic's payment obligations pursuant to the 1994 FAA Equal Treatment Provision.

6.    Similarly, this action further seeks specific performance of the Republic's payment obligations pursuant to the USD Equal Treatment Provisions.

7.    From 2005 to the present, the Republic has engaged in a course of conduct which violates the 1994 FAA Equal Treatment Provision and the USD Equal Treatment Provisions. In particular, under color of Law 26,017 passed in 2005 and Law 26,547 passed in

2

2009, the Republic issued bonds in its 2005 and 2010 Bond Exchanges with payment obligations that rank higher than those issued under the 1994 FAA and USD FAA held by Plaintiffs.  The Republic's issuance of these higher ranking bonds, facilitated by Laws 26,017 and 26,547, and its continuing payment of semi-annual interest to the holders of the bonds issued in the 2005 and 2010 Bond Exchanges, while paying nothing to Plaintiffs and other bondholders who did not participate in the Exchanges, violates the 1994 FAA Equal Treatment Provision and the USD Equal Treatment Provisions.

8.      In May 2014, the Republic also began issuing bonds bearing ISIN ARARGE03H413 (the "BONAR 2024 Bonds") and has made payments on the BONAR 2024 Bonds while paying nothing to Plaintiffs in violation of the 1994 FAA Equal Treatment Provision and the USD Equal Treatment Provisions.  In 2016, the Republic issued new External Indebtedness (the "2016 Bonds"), and, on information and belief, intends to make all payments due under the terms of the 2016 Bonds.  To prevent further violations, Plaintiffs seek specific performance of the 1994 FAA Equal Treatment Provision and the USD Equal Treatment Provisions with respect to the 2005 and 2010 Bond Exchanges, the BONAR 2024 Bonds, the 2016 Bonds, and all other External Indebtedness and Indebtedness.

### THE PARTIES

9.      Plaintiff White Hawthorne, LLC is a Delaware limited liability company.

10.      Plaintiff White Hawthorne II, LLC is a Delaware limited liability company.

11.      Defendant Republic of Argentina is a Foreign State as defined in 28 U.S.C. § 1603.

3

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330(a), as the Republic is a Foreign State which has explicitly and unconditionally waived sovereign immunity with respect to actions arising out of or based on the securities issued pursuant to the 1994 FAA, USD FAA, and DPB EA, or arising out of or based on the 1994 FAA, USD FAA, DPB EA themselves, by holders of the securities thereunder and is, therefore, not entitled to immunity under 28 U.S.C. §§ 1605-07 or under any applicable international agreement.

13.     In addition, this Court has personal jurisdiction over the Republic because the Republic regularly conducts business in New York and the Republic consented in the 1994 FAA, USD FAA, and DPB EA to submit to the jurisdiction of this Court in respect to actions arising out of or based on the securities issued pursuant to the 1994 FAA, USD FAA, and DPB EA, or arising out of or based on the 1994 FAA, USD FAA, and DPB themselves, by holders of securities issued thereunder.

14.     Venue is proper in this district by agreement of the parties and pursuant to 28 U.S.C. § 1391(f).

## FACTUAL ALLEGATIONS

### White Hawthorne II's 1994 FAA Bonds

15.     White Hawthorne II is the owner of $8,000,000 principal amount of bonds issued pursuant to the 1994 FAA by the Republic, ISIN US040114AR16 (the "US040114AR16 Bonds"). The US040114AR16 Bonds have a coupon rate of 11.375% and mature on January 30, 2017, but are presently due and payable. The US040114AR16 Bonds were advertised for bid in the January 31, 1997, *Boletín Oficial de la República Argentina*, of which the relevant pages of a true and accurate copy are attached as **Exhibit L**.

4

16.     A record of White Hawthorne II's holdings of Argentine bonds referenced above is attached as **Exhibit C.**

**White Hawthorne's USD FAA Bonds**

17.     White Hawthorne is the owner of $505,000 principal amount of bonds issued pursuant to the USD FAA by the Republic,  ISIN XS0043119147 (the "XS0043119147 Bonds").  The XS0043119147 Bonds have a coupon rate of 6% and have a maturity date of March 31, 2023, but are presently due and payable.  The XS0043119147 Bonds were advertised for bid in the May 27, 1993, *Boletín Oficial de la República Argentina*, of which the relevant pages of a true and accurate copy are attached as **Exhibit M**.

18.     A record of White Hawthorne's holdings of Argentine bonds referenced above is attached as **Exhibit D.**

**The Republic's Default Under the 1994 FAA**

19.     Pursuant to Section 12 of the 1994 FAA, the following, *inter alia*, are defined as "Events of Default":

> (a) Non-Payment:  The Republic fails to pay any principal of any of the Securities of such Series when due and payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues of a period of 30 days; or
>
> * * *
>
> (d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic.

20.     Section 12 of the 1994 FAA further provides that following either of the foregoing Events of Default, a note holder, *i.e.,* White Hawthorne II, may give the Republic written notice and declare "the principal amount of such Securities held by it to be due and payable immediately," together with all accrued interest.

5

21.     In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due on bonds issued pursuant to the 1994 FAA.

22.     Since then, the Republic has failed to make payments due on the US040114AR16 Bonds held by White Hawthorne II.

**The Republic's Default Under the USD FAA**

23.     Pursuant to Section 10 of Exhibit 1 to the DPB EA, the Terms and Conditions of the Bonds, the following, *inter alia*, is defined as "Events of Default":

> (a) interest on any Bond is not paid when due and such default continues for a period of at least 30 days; or
>
> \* \* \*
>
> (f) Argentina declares a moratorium with respect to the payment of principal of, or interest on, Publically Issued External Indebtedness of Argentina.

24.     In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due on bonds issued pursuant to the USD FAA.

25.     The last payment of interest on the XS0043119147 Bonds was on Nov 30, 2001.

26.     Since then, the Republic has failed to make payments due on the XS0043119147 Bonds held by White Hawthorne (together with the US040114AR16 Bonds held by White Hawthorne II, "Defaulted Bonds").

**The Republic's Violation of the 1994 FAA Equal Treatment Provision**

27.     Section 1 of the 1994 FAA contains an Equal Treatment Provision, which states:

6

(c)     The Securities will constitute... direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. **The payment obligations of the Republic under the Securities shall at all times rank at least equally with all of its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).**

28.     The Republic, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to White Hawthorne II.

29.     In 2005, the Republic restructured its debt by offering a bond exchange to all holders of non-performing bonds governed by the 1994 FAA (the "2005 Exchange").

30.     The 2005 Prospectus for this Bond Exchange stated:

> *Existing defaulted bonds eligible for exchange that are not tendered may remain in default indefinitely. . . . The Government has announced that it has no intention of resuming payment on any bonds eligible to participate in [the] exchange offer. . . . that are not tendered or otherwise restructured as part of such transaction. Consequently, if you elect not to tender your bonds in an exchange offer there can be no assurance that you will receive any future payments in respect to your bonds.*

31.     Holders of approximately 25% of the Republic's non-performing bonds did not participate in the 2005 Exchange  (along with those bondholders who did not participate in the 2010 Exchange as defined below, the "Non-tendering Bondholders").

32.     White Hawthorne II did not participate in the 2005 Exchange.

33.     Bondholders who participated in the 2005 Exchange ("2005 Exchange Bondholders") received bonds (the "2005 Bonds") scheduled to pay semi-annual interest.

34.     The first interest payment on the 2005 Bonds was due and paid in 2005.

35.     From 2005 through July 2014, the Republic has paid interest on the 2005 Bonds as it became due and attempted to continue to do so until at least January 2015.

36.     Upon information and belief, the Republic has resumed paying interest on

all 2005 Bonds as it becomes due, and intends to continue to do so.

37.     To facilitate the 2005 Bond Exchange, the Senate and Chamber of

Deputies of the Argentine Nation passed Law 26,017 ("the Lock Law") on February 9, 2005. A

true and correct copy of Law 26,017 and a certified translation are annexed hereto as **Exhibit E**.

38.     In its January 28, 2010 Prospectus, the Republic explained the purpose

and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the
> level of participation on the 2005 Debt Exchange, Congress
> subsequently passed Law 26,017, known as the "Lock Law." The
> Lock Law prohibited the Executive Branch from reopening the
> 2005 Debt Exchange without Congressional approval **and also
> prohibited any type of settlement involving untendered
> securities that were eligible to participate in the 2005 Debt
> Exchange . . . .**

39.     The assurances to tendering bondholders provided by Law 26,017

facilitated the Republic's completion of the 2005 Bond Exchange.

40.     Article 1 of Law 26,017 provided that Bonds not tendered in the 2005

Exchange would be subject to the following provisions:

a.     Article 2 – The national Executive Power may not, with respect to the
bonds referred to in Article 1 of this law, reopen the swap process
established in the aforementioned Decree No. 1735/04.

b.     Article 3 - The national State shall be prohibited from conducting any type
of in-court, out-of-court or private settlement with respect to the bonds
referred to in Article 1 of this law.

c.     Article 4 - The national Executive Power must – within the framework of
the terms of issuance of the respective bonds, and the applicable laws and
regulations in the corresponding jurisdictions – order the pertinent
administrative acts and fulfill the necessary procedures to remove the
bonds referred to in the preceding article from listing on all domestic and
foreign securities markets and exchanges.

41.     The Republic violated the 1994 FAA Equal Treatment Provision by

8

lowering the rank of its payment obligations under White Hawthorne II's bonds below that of other unsecured and unsubordinated External Indebtedness by relegating White Hawthorne II's bonds to a non-paying class pursuant to Law 26,017.

42.     The Republic's courts have held that the Lock Law and the Republic's moratorium on payment prevent them from recognizing and enforcing Non-tendering Bondholders' New York judgments.

43.     In 2009, in preparation for another bond exchange in 2010 (the "2010 Exchange"), the Senate and Chamber of Deputies of the Argentine Nation passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange. A true and correct copy of Law 26,547 and a certified translation are annexed hereto as **Exhibit F**.

44.     Law 26,547 provided:

a.     Article 1. The effect of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010 or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the government bonds affected by the referenced regulation is completed, whichever occurs first.

b.     Article 3. The financial terms and conditions that are offered may not be equal to or better than those offered to creditors, in the debt restructuring established by Decree No. 1735/04.

c.     Article 5. ...
It is prohibited to offer the holders of government bonds who may have initiated judicial, administrative, arbitration or any other type of action, more favorable treatment than what is offered to those who have not done so.

45.     The prospectus for the Republic's 2010 Exchange stated:

Eligible Securities in default that are not exchanged pursuant to the Invitation may remain in default indefinitely. In light of its

9

> financial and legal constraints, *Argentina does not expect to resume payments on any eligible Securities in default that remain outstanding following the expiration of the Invitation.* Argentina has opposed vigorously, and intends to continue to oppose, attempts by holders who did not participate in its prior exchange offers to collect on its defaulted debt through . . . litigation . . . and other legal proceedings against Argentina. Argentina remains subject to significant legal constraints regarding its defaulted debt.
> . . .
> Consequently, if you elect not to tender your Eligible Securities in default pursuant to the Invitation *there can be no assurance that you will receive any future payments or be able to collect through litigation in respect of your Eligible Securities in default.*

46.    White Hawthorne II did not participate in the 2010 Exchange.

47.    Holders of approximately 9% of the Republic's non-performing bonds did not participate in either the 2005 Exchange or the 2010 Exchange.

48.    The Republic violated the 1994 FAA Equal Treatment Provision by relegating White Hawthorne II's bonds to a non-paying class pursuant to Law 26,547.

49.    The Bonds issued in the 2010 Bond Exchange (the "2010 Bonds") began to pay semi-annual interest to those who participated in the Exchange (the "2010 Exchange Bondholders") in 2010.

50.    From 2010 through July 2014, the Republic paid semi-annual interest on the 2010 Bonds as it became due and attempted to continue to do so until at least January 2015.

51.    Upon information and belief, the Republic has resumed paying interest on all 2010 Bonds as it becomes due, and intends to continue to do so.

52.    For 2002 and each year thereafter, the Senate and Chamber of Deputies of the Argentine Nation included in the annual budget of the Republic a moratorium against making interest or principal payments on the Defaulted Bonds to the Non-tendering Bondholders (each, a "Moratorium").  Each time the Republic enacted a Moratorium constituted a new and separate

violation of the 1994 FAA Equal Treatment Provision.

53.     Upon information and belief, absent an Order of this Court, the Republic will continue to pay holders of External Indebtedness – including the 2005 and 2010 Exchange Bondholders – while paying nothing to White Hawthorne II.  Each payment constitutes a new and separate violation of the 1994 FAA Equal Treatment Provision.

54.     In 2013, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,886 (the "Amended Lock Law"), which amended the Lock Law in order to allow additional possible bond exchanges.  The Amended Lock Law prevented Non-tendering Bondholders from settling their claims on Defaulted Bonds at terms superior to the 2005 and 2010 Exchange Bondholders.

55.     In 2014, as part of the Republic's effort to continue making interest payments on the 2005 and 2010 Exchange Bonds (as alleged in paragraphs 35 and 50, *supra*), the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,984, which authorized the removal of the Bank of New York Mellon as trustee for the 2005 Bonds and 2010 Bonds, and created government accounts to transfer 2005 Bond and 2010 Bond funds in order to make payment on those bonds.

56.     White Hawthorne II and the other Non-tendering Bondholders have been damaged as a result of the Republic's multiple and separate violations of the Equal Treatment Provision of the FAA, and will continue to be damaged by the new and continuing violations of the 1994 FAA Equal Treatment Provision.

57.     NML Capital, Ltd. ("NML") and other pre-judgment holders of Defaulted Bonds issued pursuant to the FAA sought specific performance of the 1994 FAA Equal Treatment Provision in three pre-judgment cases styled *NML Capital, Ltd v. The Republic of*

11

*Argentina* Case Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG) (S.D.N.Y.) ("NML's pre-judgment actions").

      58.    In Orders issued in NML's three pre-judgment actions, this Court:

      a.    held that the Republic's actions, as described in paragraphs 29-56, *supra*, violated the 1994 FAA Equal Treatment Provision;

      b.    granted partial summary judgment to NML on its equal treatment claims;

      c.    held that NML had no adequate remedy at law and that, absent equitable relief, NML would suffer irreparable harm;

      d.    held that the equities strongly supported injunctive relief;

      e.    held that the Republic had the financial wherewithal to meet its payment obligations to NML in those cases; and

      f.    issued an Amended Order requiring the Republic to specifically perform its equal treatment obligations by making ratable payment to NML whenever it paid the 2005 and 2010 Exchange Bondholders the amounts due on their bonds. A true and correct copy of this Court's December 7, 2011, February 23, 2012 and November 21, 2012 Orders are annexed hereto as **Exhibits G, H, and I**, respectively.

      59.    On February 23, 2012, this Court issued an injunction to remedy the Republic's continuing violations of the 1994 FAA Equal Treatment Provision, which required the Republic to pay NML ratably whenever it paid the 2005 or 2010 Bondholders pursuant to their bonds.

      60.    On October 26, 2012, the Second Circuit affirmed this Court's February 23, 2012 decision, but remanded the injunction for clarification.

61.     The Republic petitioned for a Writ of Certiorari on the October 26, 2012 Second Circuit decision in the United States Supreme Court.  That petition was denied October 7, 2013.

62.     On November 21, 2012, this Court amended the February 23, 2012 injunction.

63.     On August 23, 2013, the Second Circuit affirmed this Court's November 21, 2012 decision.

64.     The Republic subsequently petitioned for another Writ of Certiorari on the August 23, 2013 Second Circuit decision to the United States Supreme Court, which was also denied on June 16, 2014.

65.     In response to the orders of this Court, the Second Circuit Court of Appeals, and the United States Supreme Court in NML's pre-judgment actions, the Republic's officials, including President Kirchner, frequently said that the Republic would never pay NML or any other similar bondholders such as White Hawthorne II.

66.     On June 16, 2014, President Kirchner declared in a televised address that the Republic would not "be subjected to such extortion," referring to the actions of NML and others, and this Court's Orders.

67.     On June 17, 2014, the Republic's Economy Minister Axel Kicillof announced the Republic's  plan to swap the 2005 and 2010 Exchange Bonds for new bonds payable in the Republic.

68.     On June 20, 2014, the Court issued an Order ruling that Minister Kicillof's proposed bond swap was in violation of this Court's Orders.

69.     On June 26, 2014, the Republic transferred $832 million to banks that

13

process Exchange Bond payments (including $539 million to the Bank of New York Mellon

("BNY"), the trustee for some of the Exchange Bonds) in an attempt to pay the Exchange

Bondholders without making a Ratable Payment as required under the Amended February 23

Orders.

72. On August 6, 2014, this Court held that "the payment by Argentina to

BNY . . . was illegal and a violation of the Amended February 23 Orders."  The Court also

ordered BNY to hold the funds, and expressly prohibited the Republic from taking any "steps to

interfere with BNY's retention" of the funds.

71. On September 11, 2014, the Republic enacted Law 26,984, which

purported to appoint Buenos Aires-based Nación Fideicomisos, SA in place of BNY and to

change the payment location of the Exchange Bonds explicitly to evade the "illegitimate and

illegal obstruction" created by "judicial orders issued by the Southern District Court of the City

of New York."

72. On September 29, 2014, this Court issued an Order holding the Republic

in civil contempt; and on October 3, 2014, the Court issued an Amended and Supplemental

Order regarding the Republic's civil contempt.  A true and correct copy of this Court's

September 29, 2014 and October 3, 2014 Orders are annexed hereto as **Exhibits J and K**,

respectively.

73. Upon information and belief, in May 2014, the Republic began issuing

BONAR 2024 Bonds, which, as with the 2005 and 2010 Exchange Bonds, are External

Indebtedness as defined under the 1994 FAA.

74. Upon information and belief, in December 2014, the Republic issued

approximately $650 million additional BONAR 2024 bonds.

DM1\6987987.1

75.     Upon information and belief, in April 2015, the Republic sold over $1.4 billion principal amount of BONAR 2024 Bonds.

76.     Upon information and belief, since May 2014, in total the Republic has issued approximately $5.3 billion of BONAR 2024 Bonds, much of which was sold to international investors outside of the Republic.

77.     In violation of its obligations under the 1994 FAA Equal Treatment Provision, the Republic made its first payment on the BONAR 2024 Bonds on November 7, 2014 and its second payment on May 7, 2015 while paying nothing to White Hawthorne II.

78.     Upon information and belief, the Republic intends to make all payments due under the terms of the BONAR 2024 Bonds.

79.     In 2016, the Republic made a unilateral settlement offer to the Non-tendering Bondholders, and made payments to certain Non-tendering Bondholders (the "2016 Settlement Payments").  The unilateral settlement offer made to White Hawthorne II provided for a lower settlement percentage than for other Non-tendering Bondholders.

80.     The unilateral settlement offer distinguished between certain identical securities as Injunction Offer Bonds ("Defaulted Bonds in respect of which a *pari passu* injunction has been rendered by the U.S. District Court for the Southern District of New York prior to February 1, 2016") and Standard Offer Bonds (Defaulted Bonds other than Injunction Offer Bonds).  In violation of the Equal Treatment Provision of the FAA, Argentina created a preference among identical securities.

81.     In 2016, the Senate and Chamber of Deputies of the Argentine Nation passed Law 27,249 (the "New Lock Law").  A true and correct copy of the New Lock Law and a certified translation are annexed hereto as **Exhibit N**.  The New Lock Law forbids the Republic

15

from paying White Hawthorne II anything other than the amounts set out in the unilateral settlement offer for Injunction Offer Bonds and Standard Offer Bonds.  In particular, the New Lock Law forbids the Republic from paying any claimant an amount that is higher than that offered for Standard Offer Bonds even if the claimant obtains a judgment or injunction after January 31, 2016.  The New Lock Law also does not allow the Republic to pay post-judgment interest that accrues after January 31, 2016 to any claimant.

82.     In 2016, the Republic issued the 2016 Bonds, which, as with the 2005 Bonds, the 2010 Bonds, and the BONAR 2024 Bonds, are External Indebtedness as defined under the 1994 FAA.  Upon information and belief, the Republic intends to make all payments due under the terms of the 2016 Bonds.

83.     Upon information and belief, in addition to the 2005 Bonds, the 2010 Bonds, the BONAR 2024 Bonds, and the 2016 Bonds, the Republic has issued other External Indebtedness, made payments on such External Indebtedness, and it will continue to make payments and issue more of such External Indebtedness.

84.     The Republic's issuance of and payments on the 2005 Bonds, the 2010 Bonds, the BONAR 2024 Bonds, the 2016 Bonds, and other External Indebtedness, while paying nothing to White Hawthorne II, each constitute violations of the 1994 FAA Equal Treatment Provision.

85.     To prevent further violations, White Hawthorne II seeks specific enforcement of the 1994 FAA Equal Treatment Provision – the relief previously awarded to NML – with respect to the 2005 Bonds and 2010 Bonds.  White Hawthorne II seeks specific enforcement of the 1994 FAA Equal Treatment Provision with respect to the BONAR 2024 Bonds, the 2016 Bonds, and with respect to all other External Indebtedness.  White Hawthorne II

16

also seeks damages with respect to each of the Republic's breaches of the 1994 FAA Equal Treatment Provision in an amount equal to the principal and accrued interest on their 1994 FAA bonds.

86.     The Finance Secretariat of the Tax and Economy Ministry of the Argentina publishes a Trimester Statement of Public Debt (the "Trimester Statement") four times each year.  The Trimester Statements were published continuously from 2007 through 2015 and referred to both the principal and accruing interest on the bonds that were not submitted for exchange.  A true and accurate copy of an excerpt of the Trimester Statement dated March 31, 2015 is attached as **Exhibit O**.

87.     In addition, Argentina filed a Form 18-K Annual Report with the United States Securities and Exchange Commission on September 30, 2011 (the "18-K"), a true and accurate copy of Exhibit E of which is attached as **Exhibit P**.

88.     The Trimester Statements and the 18-K are public statements of Argentina's debt, and include the bonds that are the subject of this Amended Complaint.   The specific arrears for the issues of bonds held by White Hawthorne II are set forth in Exhibit O at pp. 8-9.  The 18-K does not track the accrual of defaulted interest, but includes the principal amount of the Defaulted Bonds held by White Hawthorne II in Exhibit E to the 18-K (the Tables and Supplemental Information-Foreign Currency Denominated Debt-Direct Debt-Foreign-Currency Denominated Defaulted Bonds).  *See* Exhibit P.

**The Republic's Violation of the USD Equal Treatment Provisions**

89.     Section 4.01(f) of the DPB EA contains an Equal Treatment Provision, which states:

> The payment obligations of Argentina under the Agreement and
> each other Principal Bond Agreement when executed and delivered

DM1\6987987.1

hereunder will rank at least pari passu in priority of payment (i) with all other Indebtedness of Argentina which, by its terms, is payable or, at the option of the holder thereof, may be payable, in a currency other than Pesos and (ii) with all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which, by its terms, is payable or, at the option of the holder thereof, may be payable in a currency other than Pesos.

90. Section 9(a)(ii) of the Terms and Conditions of Bonds, attached as Exhibit 1 to the DPB EA, also contains the USD Equal Treatment Provision, which states that the Republic will:

> Ensure that at all times its obligations hereunder constitute unconditional general obligations of Argentina ranking at least pari passu in priority of payment with (A) all other Indebtedness of Argentina which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Peso and (B) all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos.

91. The Republic, therefore, may not make any payment of its so-defined Indebtedness without also making a ratable payment at the same time to White Hawthorne.

92. In 2005, the Republic restructured its debt by offering the 2005 exchange to all holders of non-performing bonds governed by the 1994 FAA.

93. The 2005 Prospectus for this Bond Exchange stated:

> *Existing defaulted bonds eligible for exchange that are not tendered may remain in default indefinitely. . . . The Government has announced that it has no intention of resuming payment on any bonds eligible to participate in [the] exchange offer. . . . that are not tendered or otherwise restructured as part of such transaction. Consequently, if you elect not to tender your bonds in an exchange offer there can be no assurance that you will receive any future payments in respect to your bonds.*

94. Holders of approximately 25% of the Republic's non-performing bonds

18

did not participate in the 2005 Exchange.

95.    White Hawthorne did not participate in the 2005 Exchange.

96.    The 2005 Exchange Bondholders received the 2005 Bonds, which were scheduled to pay semi-annual interest.

97.    The first interest payment on the 2005 Bonds was due and paid in 2005.

98.    From 2005 through July 2014, the Republic has paid interest due on the 2005 Bonds as it became due and attempted to continue to do so until at least January 2015.

99.    Upon information and belief, the Republic has resumed paying interest on all 2005 Bonds as it becomes due, and intends to continue to do so.

100.    To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed the Lock Law.

101.    In its January 28, 2010 Prospectus, the Republic explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation on the 2005 Debt Exchange, Congress subsequently passed Law 26,017, known as the "Lock Law." The Lock Law prohibited the Executive Branch from reopening the 2005 Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange . . . .**

102.    The assurances to tendering bondholders provided by Law 26,017 facilitated the Republic's completion of the 2005 Bond Exchange.

103.    Article 1 of Law 26,017 provided that Bonds not tendered in the 2005 Exchange would be subject to the following provisions:

> a.    Article 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

DM1\6987987.1

b.   Article 3 - The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

c.   Article 4 - The national Executive Power must – within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions – order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

104.   The Republic violated the USD Equal Treatment Provisions by lowering the rank of its payment obligations under White Hawthorne's bonds below that of other unsecured and unsubordinated Indebtedness by relegating White Hawthorne's bonds to a non-paying class pursuant to Law 26,017.

105.   The Republic's courts have held that the Lock Law and the Republic's Moratorium on payment prevent them from recognizing and enforcing Non-tendering Bondholders' New York judgments.

106.   In 2009, in preparation for the 2010 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange.

107.   Law 26,547 provided:

a.   Article 1. The effect of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010 or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the government bonds affected by the referenced regulation is completed, whichever occurs first.

b.   Article 3. The financial terms and conditions that are offered may not be equal to or better than those offered to creditors, in the debt restructuring established by Decree No. 1735/04.

20

c.   Article 5. ...
It is prohibited to offer the holders of government bonds who may have initiated judicial, administrative, arbitration or any other type of action, more favorable treatment than what is offered to those who have not done so.

108.   The prospectus for the Republic's 2010 Exchange stated:

Eligible Securities in default that are not exchanged pursuant to the Invitation may remain in default indefinitely. In light of its financial and legal constraints, *Argentina does not expect to resume payments on any eligible Securities in default that remain outstanding following the expiration of the Invitation.* Argentina has opposed vigorously, and intends to continue to oppose, attempts by holders who did not participate in its prior exchange offers to collect on its defaulted debt through . . . litigation . . . and other legal proceedings against Argentina. Argentina remains subject to significant legal constraints regarding its defaulted debt. . . .
Consequently, if you elect not to tender your Eligible Securities in default pursuant to the Invitation *there can be no assurance that you will receive any future payments or be able to collect through litigation in respect of your Eligible Securities in default.*

109.   White Hawthorne did not participate in the 2010 Exchange.

110.   Holders of approximately 9% of the Republic's non-performing bonds did not participate in either the 2005 Exchange or the 2010 Exchange.

111.   The Republic violated the USD Equal Treatment Provisions by relegating White Hawthorne's bonds to a non-paying class pursuant to Law 26,547.

112.   The Republic began to pay semi-annual interest on the 2010 Bonds to the 2010 Exchange Bondholders in 2010.

113.   From 2010 through July 2014, the Republic paid semi-annual interest on the 2010 Bonds as it became due and attempted to continue to do so until at least January 2015.

114.   Upon information and belief, the Republic has resumed paying interest on all 2010 Bonds as it becomes due, and intends to continue to do so.

21

115.   For 2002 and each year thereafter, the Senate and Chamber of Deputies of the Argentine Nation included in the annual budget of the Republic a moratorium against making interest or principal payments on the Defaulted Bonds to the Non-tendering Bondholders (each, a "Moratorium"). Each time the Republic enacted a Moratorium constituted new and separate violations of the USD Equal Treatment Provisions.

116.   Upon information and belief, absent an Order of this Court, the Republic will continue to pay holders of Indebtedness – including the 2005 and 2010 Exchange Bondholders – while paying nothing to White Hawthorne. Each payment constitutes new and separate violations of the USD Equal Treatment Provisions.

117.   In 2013, the Senate and Chamber of Deputies of the Argentine Nation passed the Amended Lock Law, which amended the Lock Law in order to allow additional possible bond exchanges. The Amended Lock Law prevented Non-tendering Bondholders from settling their claims on Defaulted Bonds at terms superior to the 2005 and 2010 Exchange Bondholders.

118.   In 2014, as part of the Republic's effort to continue making interest payments on the 2005 and 2010 Exchange Bonds (as alleged in paragraphs 98 and 113, *supra*), the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,984, which authorized the removal of the Bank of New York Mellon as trustee for the 2005 Bonds and 2010 Bonds, and created a government accounts to transfer 2005 Bond and 2010 Bond funds in order to make payment on those bonds.

119.   White Hawthorne and the other Non-tendering Bondholders have been damaged as a result of the Republic's multiple and separate violations of the USD Equal Treatment Provisions, and will continue to be damaged by the new and continuing violations of

22

the USD Equal Treatment Provisions.

120.   NML and other pre-judgment holders of Defaulted Bonds issued pursuant to the FAA sought specific performance of the 1994 FAA Equal Treatment Provision in NML's pre-judgment actions.

121.   In Orders issued in NML's three pre-judgment actions, this Court:

a.   held that the Republic's actions, as described in paragraphs 92-119, *supra*, violated the 1994 FAA Equal Treatment Provision;

b.   granted partial summary judgment to NML on its equal treatment claims;

c.   held that NML had no adequate remedy at law and that, absent equitable relief, NML would suffer irreparable harm;

d.   held that the equities strongly supported injunctive relief;

e.   held that the Republic had the financial wherewithal to meet its payment obligations to NML in those cases; and

f.   issued an Amended Order requiring the Republic to specifically perform its equal treatment obligations by making ratable payment to NML whenever it paid the 2005 and 2010 Exchange Bondholders the amounts due on their bonds.

122.   On October 26, 2012, the Second Circuit affirmed this Court's February 23, 2012 decision, but remanded the injunction for clarification.

123.   The Republic petitioned for a Writ of Certiorari on the October 26, 2012 Second Circuit decision in the United States Supreme Court.  That petition was denied October 7, 2013.

124.   On November 21, 2012, this Court amended the February 23, 2012

injunction.

125.    On August 23, 2013, the Second Circuit affirmed this Court's November 21, 2012 decision.

126.    The Republic subsequently petitioned for another Writ of Certiorari on the August 23, 2013 Second Circuit decision to the United States Supreme Court, which was also denied on June 16, 2014.

127.    In response to the orders of this Court, the Second Circuit Court of Appeals, and the United States Supreme Court in NML's pre-judgment actions, the Republic's officials, including President Kirchner, frequently said that the Republic would never pay NML or any other similar bondholders such as White Hawthorne.

128.    On June 16, 2014, President Kirchner declared in a televised address that the Republic would not "be subjected to such extortion," referring to the actions of NML and others, and this Court's Orders.

129.    On June 17, 2014, the Republic's Economy Minister Axel Kicillof announced the Republic's  plan to swap the 2005 and 2010 Exchange Bonds for new bonds payable in the Republic.

130.    On June 20, 2014, the Court issued an Order ruling that Minister Kicillof's proposed bond swap was in violation of this Court's Orders.

131.    On June 26, 2014, the Republic transferred $832 million to banks that process Exchange Bond payments (including $539 million to the BNY), the trustee for some of the Exchange Bonds) in an attempt to pay the Exchange Bondholders without making a Ratable Payment as required under the Amended February 23 Orders.

132.    On August 6, 2014, this Court held that "the payment by Argentina to

24

BNY . . . was illegal and a violation of the Amended February 23 Orders." The Court also ordered BNY to hold the funds, and expressly prohibited the Republic from taking any "steps to interfere with BNY's retention" of the funds.

133.    On September 11, 2014, the Republic enacted Law 26,984, which purported to appoint Buenos Aires-based Nación Fideicomisos, SA in place of BNY and to change the payment location of the Exchange Bonds explicitly to evade the "illegitimate and illegal obstruction" created by "judicial orders issued by the Southern District Court of the City of New York."

134.    On September 29, 2014, this Court issued an Order holding the Republic in civil contempt; and on October 3, 2014, the Court issued an Amended and Supplemental Order regarding the Republic's civil contempt.

135.    Upon information and belief, in May 2014, the Republic began issuing BONAR 2024 Bonds, which, as with the 2005 and 2010 Exchange Bonds, are Indebtedness as defined under the DPB EA.

136.    Upon information and belief, in December 2014, the Republic issued approximately $650 million additional BONAR 2024 bonds.

137.    Upon information and belief, in April 2015, the Republic sold over $1.4 billion principal amount of BONAR 2024 Bonds.

138.    Upon information and belief, since May 2014, in total the Republic has issued approximately $5.3 billion of BONAR 2024 Bonds, much of which was sold to international investors outside of the Republic.

139.    In violation of its obligations under the USD Equal Treatment Provisions, the Republic made its first payment on the BONAR 2024 Bonds on November 7, 2014 and its

second payment on May 7, 2015 while paying nothing to White Hawthorne.

140.    Upon information and belief, the Republic intends to make all payments due under the terms of the BONAR 2024 Bonds.

141.    In 2016, the Republic made a unilateral settlement offer to the Non-tendering Bondholders, and made the 2016 Settlement Payments to certain Non-tendering Bondholders.  The unilateral settlement offer made to White Hawthorne provided for a lower settlement percentage than for other Non-tendering Bondholders.

142.    The unilateral settlement offer distinguished between certain identical securities as Injunction Offer Bonds ("Defaulted Bonds in respect of which a *pari passu* injunction has been rendered by the U.S. District Court for the Southern District of New York prior to February 1, 2016") and Standard Offer Bonds (Defaulted Bonds other than Injunction Offer Bonds).  In violation of the USD Equal Treatment Provisions, Argentina created a preference among identical securities.

143.    In 2016, the Senate and Chamber of Deputies of the Argentine Nation passed the New Lock Law.  See Exhibit N.  The New Lock Law forbids the Republic from paying White Hawthorne anything other than the amounts set out in the unilateral settlement offer for Injunction Offer Bonds and Standard Offer Bonds.  In particular,  the New Lock Law forbids the Republic from paying any claimant an amount that is higher than that offered for Standard Offer Bonds even if the claimant obtains a judgment or injunction after January 31, 2016.  The New Lock Law also does not allow the Republic to pay post-judgment interest that accrues after January 31, 2016 to any claimant.

144.    Upon information and belief, in addition to the 2005 Bonds, the 2010 Bonds, the BONAR 2024 Bonds,  and the 2016 Bonds, the Republic has issued other

Indebtedness, made payments on such Indebtedness, and it will continue to make payments and issue more of such Indebtedness.

145.    The Republic's issuance of and payments on the 2005 Bonds, the 2010 Bonds, the BONAR 2024 Bonds, the 2016 Bonds, and other Indebtedness, while paying nothing to White Hawthorne, each constitute violations of the USD Equal Treatment Provisions.

146.    The Finance Secretariat of the Tax and Economy Ministry of the Argentina publishes the Trimester Statement four times each year.  The Trimester Statements were published continuously from 2007 through 2015 and referred to both the principal and accruing interest on the bonds that were not submitted for exchange.  *See* Exhibit O.

147.    In addition, Argentina filed a Form 18-K Annual Report with the United States Securities and Exchange Commission on September 30, 2011.  *See* Exhibit P.

148.    The Trimester Statements and the 18-K are public statements of Argentina's debt, and include the bonds that are the subject of this Amended Complaint.   The specific arrears for the issues of bonds held by White Hawthorne are set forth in Exhibit O at pp. 7-8.  The 18-K does not track the accrual of defaulted interest, but includes the principal amount of the Defaulted Bonds held by White Hawthorne in Exhibit E to the 18-K (the Tables and Supplemental Information-Foreign Currency Denominated Debt-Direct Debt-Foreign-Currency Denominated Defaulted Bonds).  *See* Exhibit P.

## FIRST CLAIM FOR RELIEF
(For Breach of Contract on the US040114AR16 Bonds)

149.    White Hawthorne II repeats and realleges the allegations set forth in paragraphs 1 through 148 herein.

150.    The US040114AR16 Bonds are a Series of Securities under the terms of the 1994 FAA.

27

151.     Pursuant to Sections 12(a) and (d) of the 1994 FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the US040114AR16 Bonds entitling White Hawthorne II to declare the principal amount of the US040114AR16 Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

152.     On or about February 10, 2016, White Hawthorne II advised the Republic, by written notice to the Republic's Fiscal Agent, that it was declaring the entire principal amount of the US040114AR16 Bonds held by White Hawthorne II, together with any accrued and unpaid interest, to be immediately due and payable pursuant to Section 12 of the 1994 FAA.

153.     Despite the notice, the Republic has failed to make any payments of principal or interest on the US040114AR16 Bonds to the White Hawthorne II.

154.     By reason of the foregoing, the Republic has breached its contractual obligations to White Hawthorne II, and the Republic is liable to White Hawthorne II for damages in amount to be determined at trial, plus interest.

## SECOND CLAIM FOR RELIEF
(For Damages for Breach of the Equal Treatment Provision of the FAA regarding US040114AR16 Bonds)

155.     White Hawthorne II repeats and realleges the allegations set forth in paragraphs 1 through 154 herein.

156.     The US040114AR16 Bonds are a Series of Securities under the terms of the FAA.

157.     The Republic has breached its continuing obligations under the 1994 FAA Equal Treatment Provision by (i) issuing and making payments on the 2005 Bonds, the 2010 Bonds, the BONAR 2024 Bonds, and the 2016 Bonds without ratable payments to White

28

Hawthorne II, (ii) passing discrete pieces of legislation to avoid paying on White Hawthorne II's bonds, (iii) issuing a Moratorium each year on payment of White Hawthorne II's bonds, (iv) discriminating between identical securities in its unilateral settlement offer, and (v) funding the 2016 Settlement Payments.

158.    By reason of the foregoing, the Republic has breached its contractual obligations to White Hawthorne II, and the Republic is liable to White Hawthorne II for damages in an amount to be determined at trial, plus interest.

## THIRD CLAIM FOR RELIEF
(For Specific Enforcement of the 1994 FAA Equal Treatment Provision and for Injunctive Relief)

159.    White Hawthorne II repeats and realleges the allegations set forth in paragraphs 1 through 158 herein.

160.    Pursuant to Section 1(c) of the 1994 FAA, the Republic provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . ."

161.    The Republic, therefore, may not make any payment on its 2005 Bonds and 2010 Bonds without also making a ratable payment at the same time to White Hawthorne II.

162.    The Republic has engaged in a course of conduct violative of the 1994 FAA Equal Treatment Provision.

163.    Through the passage of Law 26,017, the Republic issued a new series of bonds with payment obligations that rank higher than those held by White Hawthorne II and

other Non-tendering Bondholders in violation of the 1994 FAA Equal Treatment Provision.

164.    Through the passage of Law 26,547, the Republic issued a new series of bonds with payment obligations that rank higher than those held by White Hawthorne II and other Non-tendering Bondholders in violation of the 1994 FAA Equal Treatment Provision.

165.    The bonds issued in the Exchanges are External Indebtedness.

166.    The Republic's legislative actions forbidding payment on non-tendered bonds violate the 1994 FAA Equal Treatment Provision.

167.    The Republic's past payment of interest to 2005 Bondholders, while paying nothing to White Hawthorne II and other Non-tendering Bondholders, violated the 1994 FAA Equal Treatment Provision.

168.    The Republic's past payment of interest to 2010 Bondholders, while paying nothing to White Hawthorne II and other Non-tendering Bondholders, violated the 1994 FAA Equal Treatment Provision.

169.    The Republic's continuing payments of interest to 2005 Bondholders without ratable payment to White Hawthorne II will be a continuing violation of the 1994 FAA Equal Treatment Provision.

170.    The Republic's continuing payments of interest to 2010 Bondholders without ratable payment to White Hawthorne II will be a continuing violation of the 1994 FAA Equal Treatment Provision.

171.    White Hawthorne II has suffered irreparable injury from the Republic's violation of the 1994 FAA Equal Treatment Provision and will continue to suffer such injury unless this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne II ratably whenever it pays interest to the 2005 or 2010

30

Bondholders.

172.     In its December 7, 2011 Order in the NML pre-judgment actions, this Court specifically held that the Republic's Equal Treatment obligations applied to bondholders who have brought actions to recover on their defaulted bonds:

> It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

*Id.* at 4 ¶ 3.

173.     Therefore, relief identical to that granted in the pre-judgment cases in NML's pre-judgment actions is warranted in White Hawthorne II's pre-judgment and summary judgment case.

174.     Remedies available at law are inadequate to compensate for such injury.

175.     White Hawthorne II has performed its part of the contract with the Republic.

176.     The Republic is capable of performing its obligations pursuant to the 1994 FAA Equal Treatment Provision.

177.     The balance of the equities tips toward the issuance of an injunction.

178.     The public interest would not be disserved by a permanent injunction.

## FOURTH CLAIM FOR RELIEF
(For Specific Enforcement of the 1994 FAA Equal Treatment Provision
and for Injunctive Relief With Respect to the BONAR 2024 Bonds and the 2016 Bonds)

179.     White Hawthorne II repeats and realleges the allegations set forth in paragraphs 1 through 178 herein.

180.     Pursuant to Section 1(c) of the FAA, the Republic provided that its bonds

issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . ."

181.    The Republic, therefore, may not make any payment on its External Indebtedness without also making a ratable payment at the same time to White Hawthorne II. Any payment of External Indebtedness where the Republic does not also make a ratable payment at the same time to White Hawthorne II constitutes a violation of the 1944 Equal Treatment Provision.

182.    The Republic has engaged in a course of conduct violative of the 1994 FAA Equal Treatment Provision.

183.    Through the issuance of the BONAR 2024 Bonds and the 2016 Bonds, the Republic issued new series of bonds with payment obligations that rank higher than those held by White Hawthorne II and other Non-tendering Bondholders in violation of the 1994 FAA Equal Treatment Provision.

184.    The BONAR 2024 Bonds and the 2016 Bonds are External Indebtedness. The issuance of the BONAR 2024 Bonds and the 2016 Bonds to date and future issuances of these bonds has violated and will violate the 1994 FAA Equal Treatment Provision.

185.    The Republic's past payment of interest to the holders of the BONAR 2024 Bonds and the 2016 Bonds, while paying nothing to White Hawthorne II and other Non-tendering Bondholders, violated the 1994 FAA Equal Treatment Provision.

186.    The Republic's continuing payments of interest to the holders of the

DM1\6987987.1

BONAR 2024 Bonds or the 2016 Bonds without ratable payment to White Hawthorne II will be a continuing violation of the 1994 FAA Equal Treatment Provision.

187.    White Hawthorne II has suffered irreparable injury from the Republic's violation of the 1994 FAA Equal Treatment Provision and will continue to suffer such injury unless this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne II ratably whenever it pays interest to the holders of the BONAR 2024 Bonds or the 2016 Bonds.

188.    Remedies available at law are inadequate to compensate for such injury.

189.    White Hawthorne II has performed its part of the contract with the Republic.

190.    The Republic is capable of performing its obligations pursuant to the 1994 FAA Equal Treatment Provision.

191.    The balance of the equities tips toward the issuance of an injunction.

192.    The public interest would not be disserved by a permanent injunction.

## FIFTH CLAIM FOR RELIEF
(For Specific Enforcement of the 1994 FAA Equal Treatment Provision
and for Injunctive Relief With Respect to All External Indebtedness)

193.    White Hawthorne II repeats and realleges the allegations set forth in paragraphs 1 through 192 herein.

194.    Pursuant to Section 1(c) of the FAA, the Republic provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured

33

and unsubordinated External Indebtedness . . . ."

195.    The Republic, therefore, may not make any payment on its External Indebtedness without also making a ratable payment at the same time to White Hawthorne II. Any payment of External Indebtedness where the Republic does not also make a ratable payment at the same time to White Hawthorne II constitutes a violation of the 1994 FAA Equal Treatment Provision.

196.    The Republic has engaged in a course of conduct violative of the 1994 FAA Equal Treatment Provision.

197.    Upon information and belief, the Republic has issued and will issue in the future External Indebtedness in violation of the 1994 FAA Equal Treatment Provision.

198.    The Republic's past payments to the holders of External Indebtedness, while paying nothing to White Hawthorne II and other Non-tendering Bondholders, violated the 1994 FAA Equal Treatment Provision.

199.    The Republic's continuing payments to the holders of External Indebtedness without ratable payment to White Hawthorne II, including External Indebtedness that upon information and belief the Republic will issue in the future, will be a continuing violation of the 1994 FAA Equal Treatment Provision.

200.    White Hawthorne II has suffered irreparable injury from the Republic's violation of the 1994 FAA Equal Treatment Provision and will continue to suffer such injury unless this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne II ratably whenever it pays the holders of the External Indebtedness (including, for the avoidance of doubt, any Bonar 2024 Bonds or 2016 Bonds, whether issued before or after the entry of the injunction) or holders of "Replacement

34

Obligations" (meaning bonds or other obligations issued, whether before or after entry of the injunction, in exchange, substitution, restructuring, refinancing or satisfaction of any BONAR 2024 Bonds or other Replacement Obligations).

201.    Remedies available at law are inadequate to compensate for such injury.

202.    White Hawthorne II has performed its part of the contract with the Republic.

203.    The Republic is capable of performing its obligations pursuant to the 1994 FAA Equal Treatment Provision.

204.    The balance of the equities tips toward the issuance of an injunction.

205.    The public interest would not be disserved by a permanent injunction.

### SIXTH CLAIM FOR RELIEF
(For Breach of Contract on the XS0043119147 Bonds)

206.    White Hawthorne repeats and realleges the allegations set forth in paragraphs 1 through 205 herein.

207.    The XS0043119147 Bonds are a Series of Securities under the terms of the USD FAA.

208.    Pursuant to Section 10 of Exhibit 1 to the DPB EA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the XS0043119147 Bonds entitling White Hawthorne to declare the principal amount of the XS0043119147 Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

209.    On or about February 10, 2016, White Hawthorne advised the Republic, by written notice to the Republic's Fiscal Agent, that it was declaring the entire principal amount of the XS0043119147 Bonds held by White Hawthorne, together with any accrued and unpaid interest, to be immediately due and payable pursuant to Section 10 of Exhibit 1 to the DPB EA.

DM1\6987987.1

210.     Despite the notice, the Republic has failed to make any payments of principal or interest on the XS0043119147 Bonds to the White Hawthorne.

211.     By reason of the foregoing, the Republic has breached its contractual obligations to White Hawthorne, and the Republic is liable to White Hawthorne for damages in amount to be determined at trial, plus interest.

**SEVENTH CLAIM FOR RELIEF**
(For Damages for Breach of the Equal Treatment Provisions of the DPB EA regarding XS0043119147 Bonds)

212.     White Hawthorne repeats and realleges the allegations set forth in paragraphs 1 through 211 herein.

213.     The XS0043119147 Bonds are a Series of Securities under the terms of the DPB EA.

214.     The Republic has breached its continuing obligations under the USD Equal Treatment Provisions by (i) issuing and making payments on the 2005 Bonds, the 2010 Bonds, the BONAR 2024 Bonds, and the 2016 Bonds without ratable payments to White Hawthorne, (ii) passing discrete pieces of legislation to avoid paying on White Hawthorne's bonds, (iii) issuing a Moratorium each year on payment of White Hawthorne's bonds, (iv) discriminating between identical securities in its unilateral settlement offer, and (v) funding the 2016 Settlement Payments.

215.     By reason of the foregoing, the Republic has breached its contractual obligations to White Hawthorne, and the Republic is liable to White Hawthorne for damages in an amount to be determined at trial, plus interest.

36

## EIGHTH CLAIM FOR RELIEF
(For Specific Enforcement of the USD Equal Treatment Provisions and for Injunctive Relief)

216.   White Hawthorne repeats and realleges the allegations set forth in paragraphs 1 through 215 herein.

217.   Section 4.01(f) of the DPB EA contains an Equal Treatment Provision, which states:

> The payment obligations of Argentina under the Agreement and each other Principal Bond Agreement when executed and delivered hereunder will rank at least pari passu in priority of payment (i) with all other Indebtedness of Argentina which, by its terms, is payable or, at the option of the holder thereof, may be payable, in a currency other than Pesos and (ii) with all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which, by its terms, is payable or, at the option of the holder thereof, may be payable in a currency other than Pesos.

218.   Section 9(a)(ii) of the Terms and Conditions of Bonds, attached as Exhibit 1 to the DPB EA, also contains the USD Equal Treatment Provision, which states that the Republic will:

> Ensure that at all times its obligations hereunder constitute unconditional general obligations of Argentina ranking at least pari passu in priority of payment with (A) all other Indebtedness of Argentina which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Peso and (B) all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos.

219.   The Republic, therefore, may not make any payment on its 2005 and 2010 Exchange Bonds without also making a ratable payment at the same time to White Hawthorne.

220.   The Republic has engaged in a course of conduct violative of the USD Equal Treatment Provisions.

37

221.     Through the passage of Law 26,017, the Republic issued a new series of bonds with payment obligations that rank higher than those held by White Hawthorne and other Non-tendering Bondholders in violation of the USD Equal Treatment Provisions.

222.     Through the passage of Law 26,547, the Republic issued a new series of bonds with payment obligations that rank higher than those held by White Hawthorne and other Non-tendering Bondholders in violation of the USD Equal Treatment Provisions.

223.     The bonds issued in the Exchanges are Indebtedness.

224.     The Republic's legislative actions forbidding payment on non-tendered bonds violate the USD Equal Treatment Provisions.

225.     The Republic's past payment of interest to 2005 Bondholders, while paying nothing to White Hawthorne and other Non-tendering Bondholders, violated the USD Equal Treatment Provisions.

226.     The Republic's past payment of interest to 2010 Bondholders, while paying nothing to White Hawthorne and other Non-tendering Bondholders, violated the USD Equal Treatment Provisions.

227.     The Republic's continuing payments of interest to 2005 Bondholders without ratable payment to White Hawthorne will be a continuing violation of the USD Equal Treatment Provisions.

228.     The Republic's continuing payments of interest to 2010 Bondholders without ratable payment to White Hawthorne will be a continuing violation of the USD Equal Treatment Provisions.

229.     White Hawthorne has suffered irreparable injury from the Republic's violation of the USD Equal Treatment Provisions and will continue to suffer such injury unless

38

this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne ratably whenever it pays interest to 2005 or 2010 Bondholders.

230.    In its December 7, 2011 Order in the NML pre-judgment actions, this Court specifically held that the Republic's Equal Treatment obligations applied to bondholders who have brought actions to recover on their defaulted bonds:

> It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

*Id.* at 4 ¶ 3.

231.    Therefore, relief identical to that granted in the pre-judgment cases in NML's pre-judgment actions is warranted in White Hawthorne's pre-judgment and summary judgment case.

232.    Remedies available at law are inadequate to compensate for such injury.

233.    White Hawthorne has performed its part of the contract with the Republic.

234.    The Republic is capable of performing its obligations pursuant to the USD Equal Treatment Provisions.

235.    The balance of the equities tips toward the issuance of an injunction.

236.    The public interest would not be disserved by a permanent injunction.

## NINTH CLAIM FOR RELIEF
(For Specific Enforcement of the USD Equal Treatment Provisions and for Injunctive Relief With Respect to the BONAR 2024 Bonds and the 2016 Bonds)

237.    White Hawthorne repeats and reallegse the allegations set forth in paragraphs 1 through 236 herein.

39

238.    Section 4.01(f) of the DPB EA contains an Equal Treatment Provision, which states:

> The payment obligations of Argentina under the Agreement and each other Principal Bond Agreement when executed and delivered hereunder will rank at least pari passu in priority of payment (i) with all other Indebtedness of Argentina which, by its terms, is payable or, at the option of the holder thereof, may be payable, in a currency other than Pesos and (ii) with all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which, by its terms, is payable or, at the option of the holder thereof, may be payable in a currency other than Pesos.

239.    Section 9(a)(ii) of the Terms and Conditions of Bonds, attached as Exhibit 1 to the DPB EA, also contains the USD Equal Treatment Provision, which states that the Republic will:

> Ensure that at all times its obligations hereunder constitute unconditional general obligations of Argentina ranking at least pari passu in priority of payment with (A) all other Indebtedness of Argentina which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Peso and (B) all obligations of Argentina with respect to any Indebtedness issued by a Designated Argentine Governmental Agency which by its terms is, or at the option of the holder thereof may be, payable in a currency other than Pesos.

240.    The Republic, therefore, may not make any payment on its Indebtedness without also making a ratable payment at the same time to White Hawthorne.  Any payment of Indebtedness where the Republic does not also make a ratable payment at the same time to White Hawthorne constitutes a violation of the USD Equal Treatment Provisions.

241.    The Republic has engaged in a course of conduct violative of the USD Equal Treatment Provisions.

242.    Through the issuance of the BONAR 2024 Bonds and the 2016 Bonds, the Republic issued a new series of bonds with payment obligations that rank higher than those held

by White Hawthorne and other Non-tendering Bondholders in violation of the USD Equal Treatment Provisions.

243.    The BONAR 2024 Bonds and the 2016 Bonds are Indebtedness.  The issuance of the BONAR 2024 Bonds and the 2016 Bonds to date and future issuances of these bonds has violated and will the USD Equal Treatment Provisions.

244.    The Republic's past payment of interest to the holders of the BONAR 2024 Bonds and the 2016 Bonds, while paying nothing to White Hawthorne and other Non-tendering Bondholders, violated the USD Equal Treatment Provisions.

245.    The Republic's continuing payments of interest to the holders of the BONAR 2024 Bonds or the 2016 Bonds without ratable payment to White Hawthorne will be a continuing violation of the USD Equal Treatment Provisions.

246.    White Hawthorne has suffered irreparable injury from the Republic's violation of the USD Equal Treatment Provisions and will continue to suffer such injury unless this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne ratably whenever it pays interest to the holders of the BONAR 2024 Bonds or the 2016 Bonds.

247.    Remedies available at law are inadequate to compensate for such injury.

248.    White Hawthorne has performed its part of the contract with the Republic.

249.    The Republic is capable of performing its obligations pursuant to the USD Equal Treatment Provisions.

250.    The balance of the equities tips toward the issuance of an injunction.

251.    The public interest would not be disserved by a permanent injunction.

DM1\6987987.1

## TENTH CLAIM FOR RELIEF
(For Specific Enforcement of the USD Equal Treatment Provisions and for Injunctive Relief
With Respect to All Indebtedness)

252.     White Hawthorne repeats and realleges the allegations set forth in

paragraphs 1 through 251 herein.

253.     Section 4.01(f) of the DPB EA contains an Equal Treatment Provision,

which states:

> The payment obligations of Argentina under the Agreement and
> each other Principal Bond Agreement when executed and delivered
> hereunder will rank at least pari passu in priority of payment (i)
> with all other Indebtedness of Argentina which, by its terms, is
> payable or, at the option of the holder thereof, may be payable, in a
> currency other than Pesos and (ii) with all obligations of Argentina
> with respect to any Indebtedness issued by a Designated Argentine
> Governmental Agency which, by its terms, is payable or, at the
> option of the holder thereof, may be payable in a currency other
> than Pesos.

254.     Section 9(a)(ii) of the Terms and Conditions of Bonds, attached as Exhibit

1 to the DPB EA, also contains the USD Equal Treatment Provision, which states that the

Republic will:

> Ensure that at all times its obligations hereunder constitute
> unconditional general obligations of Argentina ranking at least pari
> passu in priority of payment with (A) all other Indebtedness of
> Argentina which by its terms is, or at the option of the holder
> thereof may be, payable in a currency other than Peso and (B) all
> obligations of Argentina with respect to any Indebtedness issued
> by a Designated Argentine Governmental Agency which by its
> terms is, or at the option of the holder thereof may be, payable in a
> currency other than Pesos.

255.     The Republic, therefore, may not make any payment on its Indebtedness

without also making a ratable payment at the same time to White Hawthorne.  Any payment of

Indebtedness where the Republic does not also make a ratable payment at the same time to White

Hawthorne constitutes a violation of the USD Equal Treatment Provisions.

42

256.     The Republic has engaged in a course of conduct violative of the USD Equal Treatment Provisions.

257.     Upon information and belief, the Republic has issued and will issue in the future Indebtedness in violation of the USD Equal Treatment Provisions.

258.     The Republic's past payments to the holders of Indebtedness, while paying nothing to White Hawthorne and other Non-tendering Bondholders, violated the USD Equal Treatment Provisions.

259.     The Republic's continuing payments to the holders of Indebtedness without ratable payment to White Hawthorne, including Indebtedness that upon information and belief the Republic will issue in the future, will be a continuing violation of the USD Equal Treatment Provisions.

260.     White Hawthorne has suffered irreparable injury from the Republic's violation of the USD Equal Treatment Provisions and will continue to suffer such injury unless this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne ratably whenever it pays the holders of the Indebtedness (including, for the avoidance of doubt, any BONAR 2024 Bonds or 2016 Bonds, whether issued before or after the entry of the injunction) or holders of "Replacement Obligations" (meaning bonds or other obligations issued, whether before or after entry of the injunction, in exchange, substitution, restructuring, refinancing or satisfaction of any BONAR 2024 Bonds or other Replacement Obligations).

261.     Remedies available at law are inadequate to compensate for such injury.

262.     White Hawthorne has performed its part of the contract with the Republic.

263.     The Republic is capable of performing its obligations pursuant to the USD

43

Equal Treatment Provisions.

264.   The balance of the equities tips toward the issuance of an injunction.

265.   The public interest would not be disserved by a permanent injunction.

WHEREFORE, Plaintiffs White Hawthorne, LLC and White Hawthorne II, LLC by demand judgment against the Republic of Argentina, as follows:

i.   On Count One, awarding White Hawthorne II damages against the Republic in an amount to be determined at trial, plus interest;

ii.   On Count Two, awarding White Hawthorne II damages against the Republic in an amount to be determined at trial, plus interest;

iii.   On Count Three, awarding an Order specifically enforcing the 1994 FAA Equal Treatment Provision, by requiring ratable payment to White Hawthorne II whenever the Republic makes payments on the 2005 and 2010 exchange bonds;

iv.   On Count Four, awarding an Order specifically enforcing the 1994 FAA Equal Treatment Provision, by requiring ratable payment to White Hawthorne II whenever the Republic makes payments on the BONAR 2024 Bonds or the 2016 Bonds;

v.   On Count Five, awarding an Order specifically enforcing the 1994 FAA Equal Treatment Provision, by requiring ratable payment to White Hawthorne II whenever the Republic makes payments on all External Indebtedness;

vi.   On Count Six, awarding White Hawthorne damages against the Republic in an amount to be determined at trial, plus interest;

vii.     On Count Seven, awarding White Hawthorne damages against the Republic in an amount to be determined at trial, plus interest;

viii.     On Count Eight, awarding an Order specifically enforcing the USD Equal Treatment Provisions, by requiring ratable payment to White Hawthorne whenever the Republic makes payments on the 2005 and 2010 exchange bonds;

ix.     On Count Nine, awarding an Order specifically enforcing the USD Equal Treatment Provisions, by requiring ratable payment to White Hawthorne whenever the Republic makes payments on the BONAR 2024 Bonds or the 2016 Bonds;

x.     On Count Ten, awarding an Order specifically enforcing the USD Equal Treatment Provisions, by requiring ratable payment to White Hawthorne whenever the Republic makes payments on all Indebtedness;

xi.     Awarding Plaintiffs their costs, attorneys' fees and such other and further relief as this Court shall deem just and proper.

45

Dated: New York, New York
      June 22, 2016

By: /s/ Anthony J. Costantini
Anthony J. Costantini
Suzan Jo
Kevin P. Potere
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Telephone: (212) 692 1000
ajcostantini@duanemorris.com
sjo@duanemorris.com
kppotere@duanemorris.com


Timothy B. DeSieno
Kenneth I. Schacter
Stephen Scotch-Marmo
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000
tim.desieno@morganlewis.com
kenneth.schacter@morganlewis.com

Sabin Willett
Christopher L. Carter
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
(617) 951-8000
sabin.willett@morganlewis.com

*Counsel for Plaintiffs*

DM1\6987987.1